UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SUE A. MARTIN,<br>          Plaintiff,<br>v.<br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br>          Defendant. | Case No. 2:13-cv-01388-APG-CWH<br><br>**REPORT AND RECOMMENDATION** |

**INTRODUCTION**

This case involves judicial review of an administrative action by the Commissioner of Social Security ("defendant") denying Plaintiff Sue A. Martin's ("plaintiff") application for disability insurance benefits under Titles II and XVI of the Social Security Act. Before the Court is plaintiff's Motion for Reversal or Remand (doc. # 16), filed February 18, 2014, and defendant's Response and Cross-Motion to Affirm (docs. # 22, # 23),[1] filed April 21, 2014. Also before the Court is plaintiff's Reply (doc. # 26), filed May 28, 2014. This action was referred to the undersigned magistrate judge for a report of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**BACKGROUND**

In April 2010, plaintiff applied for disability insurance benefits and supplemental security income, alleging an onset date of December 1, 2006. AR[2] 113-20. Plaintiff's claim was denied initially on July 30, 2010, and upon reconsideration on November 1, 2010. AR 73-78; AR transcript index. A hearing was held before an Administrative Law Judge ("ALJ") on December 19, 2011. AR 38-53. On January 13,

---

[1] Defendant filed both an opposition to plaintiff's motion and a cross-motion to affirm. See Docs. # 22, # 23. This Court's review of these two documents reveals that the arguments presented are identical. Therefore, this Court refers only to defendant's cross-motion, doc. # 22, even though an identical argument is presented in defendant's opposition, doc. # 23.

[2] AR refers to the administrative record lodged with this Court. See Doc. # 15.

2012, the ALJ issued a partially favorable decision finding plaintiff disabled as of October 6, 2011. AR 25-34. Thereafter, plaintiff requested review of the ALJ's decision. AR 21. The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision final.[3] AR 1-3. Plaintiff, on August 5, 2013, commenced the instant action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c). See Docs. # 1, # 2; see also Doc. # 5.

## DISCUSSION

**1.     Legal Standards**

**a.     Judicial Standard of Review**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). Section 405(g) states that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002). The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." Id. The Ninth Circuit reviews de novo a decision issued by a district court in such cases. Batson v. Commissioner, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); Ukolov v. Barnhart, 420 F.3d 1002 (9th Cir. 2005). However, these findings may be set aside if they are based on legal error or not supported by substantial evidence. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006); see also Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see also Bayliss v. Barnhart, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, a court reviews "the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's findings

---

[3] The ALJ's decision becomes the final administrative decision of defendant.

must be upheld if supported by inferences reasonably drawn from the record. Batson, 359 F.3d at 1193. When the evidence supports more than one rational interpretation, a court must defer to the Commissioner's interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so the court does not speculate as to the basis of the findings when reviewing the Commissioner's decision. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. Lewin v. Schweiker, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." Id.

**b.     Disability Evaluation Process**

An individual seeking disability benefits has the initial burden of proving disability. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). An individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). The individual must provide "specific medical evidence" in support of the claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. Batson, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520 and 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he or she can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. See 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); see also Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Substantial gainful activity is defined as work activity that is both substantial

and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b). If the individual is currently engaging in substantial gainful activity, then a finding of not disabled is made. If the individual is not engaging in substantial gainful activity, then the analysis proceeds to step two.

The second step addresses whether the individual has a medically determinable impairment, or combination of impairments, that is severe and significantly limits performance of basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. See 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSR") 85-28, 96-3p, and 96-4p.[4] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appedix 1. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h) and 416.920(h). If the individual's impairment, or combination of impairments, does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four, but, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e) and 416.920(e).

The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. See SSR 96-8p. In determining the RFC, an ALJ must consider all relevant evidence, including all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and

---

[4] An SSR constitutes the Social Security Administration's official interpretation of the statute and its regulations. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009); see also 20 C.F.R. § 402.35(b)(1). An SSR is entitled to some deference as long as it is consistent with the Social Security Act and regulations. Bray, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

4

other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927, and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

At step four, the ALJ must determine whether the individual has the RFC to perform past relevant work, which means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). In addition, the work must have lasted long enough for the individual to learn the job and performed as substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g) and 416.920(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates other work exists in significant numbers in the national economy that the individual can do. Yuckert, 482 U.S. at 141-42.

**2.     The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 26-33. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date of December 1, 2006. AR 27. At step two, the ALJ found that plaintiff had severe impairments of hypertension, degenerative disc disease of the cervical and lumbar spine, a history of multiple myalgias, rheumatoid arthritis, degenerative joint disease of the right knee, and hypothyroidism. AR 27-29. At step three, the ALJ found that, prior to October 6, 2011, plaintiff did not

have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 29. Under step four, the ALJ found that prior to October 6, 2011, plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but was limited to frequent climbing of ramps or stairs; frequent balancing; occasional climbing of ladders, ropes or scaffolds; occasional kneeling, crouching, and crawling; and no exposure to workplace hazards, such as unprotected heights or moving machinery. Id. The ALJ also determined that plaintiff could perform past relevant work as an inventory manager, real estate agent, office manager, and bakery sales clerk, subject to the aforementioned limitations. AR 32. Accordingly, the ALJ concluded that plaintiff was not disabled prior to October 6, 2011. AR 33.

**3.     Analysis**

### a.     Disability Onset Date

Plaintiff seeks reversal or remand of the ALJ's decision, claiming the ALJ erred by failing to obtain medical expert testimony to resolve the "ambiguous" onset date of plaintiff's disability. See Doc. # 16-1 at 8-9 (citing, among others, Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589-90 (9th Cir. 1998)). Plaintiff further contends the ALJ improperly relied on the date plaintiff's electromyogram ("EMG") test was conducted to establish plaintiff's disability onset date despite plaintiff's earlier debilitating symptoms, which constitutes legal error. Id. at 7-9.

In response, defendant argues the ALJ did not err because while Armstrong requires an ALJ to obtain medical expert testimony when a disability onset date is "ambiguous," no ambiguity exists here. See Doc. # 22 at 4. According to defendant, the ALJ properly determined that plaintiff was not disabled until October 6, 2011 when the EMG test showed evidence of cervical motor radiculopathy with involvement of nerve roots and denervation. Id. at 3 (citing AR 33). Defendant explains that, prior to October 6, 2011, no evidence existed demonstrating that plaintiff had a disability. Id. at 3 (citing AR 27, 30). In support, defendant points out that plaintiff continued working full-time through 2008 and sought no medical treatment until September 2009, with plaintiff's physical exam records from September 2009 to August 2011 showing "generally unremarkable" results. Id. at 3-5 (AR 30-32). For example, while plaintiff's CT scan of the cervical spine showed significant degenerative change at C5-C6, plaintiff was found to be neurologically sound, and while plaintiff's right knee showed some degenerative changes,

"[n]o acute abnormality" was found. Id. at 5-6 (citing AR 296, 300). Medical reports also revealed that plaintiff's hyperthyroidism was "corrected" by medication, her blood pressure was under control, she had only "minimal" tenderness to palpation in her spinal area, and no weakness was found in any part of her body. Id. (citing AR 31, 263, 279, 296, 300). Other reports revealed that plaintiff had no history of depression or psychiatric illness, no neurological impingement in the back, no gross neurological motor deficit, reasonable range of motion in the neck, normal grip and lower extremity strength, and a negative result from her straight leg test for the lower back. Id. at 6 (citing AR 260, 262-63). Defendant adds that plaintiff's medical complaints were treated conservatively, with plaintiff given medication and then released. Id. at 3, 5, 7 (citing AR 179-215, 254-55).

Defendant further points out that medical opinions in the record agree plaintiff remained capable of performing at least light exertion work, and plaintiff did not report worsening symptoms until September 29, 2011. See Doc. # 22 at 4, 8 (citing AR 31-32, 54-61, 223-33, 353). In support, defendant points to Dr. Jennifer Avena's ("Avena") observation that plaintiff was pleasant, cooperative, ambulatory, and in no acute distress, and Dr. Wenceslao A. Cabaluna's ("Cabaluna") opinion that plaintiff had the ability to: (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently, (2) sit, stand, and walk for about 6 hours in an 8-hour workday, (3) occasionally crawl and climb ladders or scaffolds, and (4) frequently perform all other postural activities while avoiding extreme temperatures. Id. at 7 (citing AR 230, 232-33, 369). Defendant also points to Dr. William Dougan's ("Dougan") conclusion that plaintiff was capable of light level work with some postural and environmental limitations. Id. at 9 (citing AR 61, 653).

Meanwhile, defendant questions the truth of plaintiff's assertions, claiming plaintiff only sought treatment in March 2011 when her insurance was about to expire, and plaintiff was referred for physical therapy at one point but was discharged due to erratic attendance. The ALJ therefore reasonably inferred that the economic conditions of 2008, not a disability, caused plaintiff's departure from the workforce. See Doc. # 22 at 5-7 (citing AR 31, 364, 369). Given such, defendant submits the ALJ properly found plaintiff disabled only when the EMG test revealed evidence of her subjective complaints of weakness, with the ALJ even giving plaintiff the benefit of the doubt by adopting Dougan's more "restrictive functional assessment." Id. at 9 (citing AR 31-32).

In reply, plaintiff restates her earlier assertions. See Doc. # 26 at 4-5. Plaintiff also contends her disability onset date should be September 27, 2011, not October 6, 2011, because the MRI test taken on September 27th, which defendant fails to address in its opposition, reveals plaintiff's "extensive and extremely severe cervical and lumbar spine pathology," and "confirms" that plaintiff was suffering "serious physical symptoms" much earlier than October 6, 2011. Id. at 3-4 (citing AR 402). Moreover, plaintiff contends that defendant's reliance on various medical opinions is misplaced because the MRI and EMG results were not available at the time those opinions issued, with one opinion even appearing to be a mere "rubber stamp" of another. Id. at 5-6 (citing AR 32, 54-61, 223-34, 353, 402, 406). As such, plaintiff asks the Court to remand the instant case. Id. at 7.

Contrary to plaintiff's assertion, the Court finds no ambiguity regarding plaintiff's disability onset date. Indeed, plaintiff's proposed onset date of September 27, 2011 belies her assertion that an ambiguity exists. The ALJ was therefore not required to obtain a medical expert to testify and resolve any ambiguity. Nevertheless, the Court agrees with plaintiff that the proper onset date is September 27, 2011, not October 6, 2011, because the MRI test taken on September 27, 2011 and reported on September 29, 2011, which the ALJ failed to consider, demonstrates that plaintiff was already suffering from severe cervical and lumbar spine symptoms, including severe canal stenosis from C3-4 through C6-7 and severe bilateral foraminal stenosis. AR 402. The EMG test conducted on October 6, 2011 further confirms plaintiff was suffering from severe symptoms. As such, the Court remands the instant case for an award of benefits beginning on September 27, 2011.

**b.     RFC**

Plaintiff also disputes the ALJ's RFC finding that plaintiff's mental impairments were not medically determinable. See Doc. # 16-1 at 9. Specifically, plaintiff contends the ALJ failed to properly evaluate plaintiff's mental impairments or offer a finding regarding the "extent" of her mental limitations. Id. at 11. Plaintiff further contends that evidence exists on the record demonstrating plaintiff's mental limitations. Id. For example, plaintiff points to Dr. Jack Araza's ("Araza") report, which purportedly recognized that plaintiff suffers from somatoform disorders resulting in at least mild limitations, although plaintiff concedes that Araza concluded plaintiff's mental impairments were not severe. Id. at 12 (citing AR 240, 250). Plaintiff then points to Dr. Lynn D. Larson's ("Larson") report, which concluded that

plaintiff's immediate memory was "below average limits," her fund of general information "fair," her range of intellectual ability "low average," and her global assessment of functioning "60"–a score purportedly indicating the presence of moderate symptoms or moderate difficulty in social, occupational, or school functioning. Id. at 13 (citing AR 220-21 and Diagnostic and Statistical Manual of Mental Disorders - Text Revision (4th ed. 2000), at 34).

      Defendant, in opposition, argues the ALJ properly assessed that plaintiff had no medically determinable mental impairment and this finding is supported by substantial evidence. See Doc. # 22 at 11 (citing AR 28). Specifically, defendant points out the ALJ considered plaintiff's "virtually non-existent" psychiatric complaints to treating physicians, her lack of psychiatric treatment, and her mental status exam showing no significant mental limitations. Id. at 11, 13 (citing AR 217-21, 262). Defendant next points out that while plaintiff turns to Araza's opinion for support, Araza actually determined that plaintiff only had mild difficulty in maintaining concentration, persistence, or pace. Id. at 12 (citing AR 250). Defendant then points out that while plaintiff claims her concentration is "very lacking," Larson opined that plaintiff "exhibited adequate concentration on most [] tasks," had good abstract reasoning, and showed good judgment on various comprehension probes, with Larson concluding that plaintiff's complaints were primarily physical and her mental status exam was "largely unremarkable." Id. at 12-13 (citing AR 217-21). Defendant also points out that the medical record reveals plaintiff is capable of: (1) "appropriate" social skills; (2) understanding and remembering; (3) carrying out an extensive variety of complex, detailed instructions; (4) interacting appropriately with supervisors, co-workers, and the public; and (5) "excellent" short-term memory and "good" delayed memory. Id. at 13 (citing AR 220-21). Defendant further points out that plaintiff's own self-reported activities belie her assertions, especially since plaintiff admits speaking to her family nearly every day, speaking to friends and neighbors often, eating out occasionally with friends and family, attending church, visiting friends or having friends over, and corresponding with others via letters, texts, or emails. Id. (citing AR 219). Defendant adds that the ALJ considered and found the existence of other severe impairments, thereby rendering any purported error harmless. Id. at 11, 14 (citing AR 29).

      In reply, plaintiff contends she has nothing more to add to her earlier assertions. See Doc. # 26 at 7.

This Court is not persuaded by plaintiff's arguments, and agrees with defendant. The record reveals that plaintiff's psychiatric symptoms were insufficient to cause work-related mental limitations, especially in light of Araza and Larson's observations and assessments, along with plaintiff's own self-reported activities, lack of suicidal tendencies or history of mental health hospitalizations, and objective medical evidence on the record. Ultimately, this Court finds the ALJ carefully reviewed and weighed all relevant medical opinions, regulations, and guidelines in determining the issue of plaintiff's mental limitations. Contrary to plaintiff's assertions, moreover, the ALJ provided specific, clear, and convincing reasons for deciding the issue of plaintiff's mental limitations.

## CONCLUSION AND RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that plaintiff's Motion for Reversal or Remand (doc. # 16) be **granted in part and denied in part**. This matter should be remanded for an award of benefits beginning on September 27, 2011.

**IT IS FURTHER RECOMMENDED** that defendant's Cross-Motion to Affirm (doc. # 22) be **granted in part and denied in part**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The U.S. Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. Thomas v. Arn, 474 U.S. 140, 142 (1985). This circuit has also held that failure to file objections within the specified time, and failure to properly address and brief the objectionable issues, waives the right to appeal the district court's order and/or appeal factual issues from the order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983).

DATED: April 14, 2015

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**